**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| David Lawrence, | : | Case No. 1:09CV1952 |
| Plaintiff, | : | |
| vs. | : | **MAGISTRATE'S REPORT & RECOMMENDATION** |
| Commissioner of Social Security Administration, | : | |
| Defendant. | : | |

Plaintiff seeks judicial review of a final decision of the Commissioner denying his application for Supplemental Social Security Income (SSI) under Title XVI of the Social Security Act (the Act), 42 U. S. C. § §§ 1381, *et seq*. and 405(g). Pending are briefs on the merits filed by both parties and the Reply filed by Plaintiff (Docket Nos. 16, 19 & 24). For the foregoing reasons, the Magistrate recommends that the Court remand this case pursuant to Sentence Four of 42 U. S. C. § 405(g).

### I. PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI with a protective filing date of February 16, 1999, alleging disability since June 1, 1988. His claim was denied initially and upon reconsideration. On March 16, 2000, Administrative Law Judge (ALJ) Morley White found that Plaintiff was not eligible for SSI (Tr. 49-53).

Plaintiff filed an application for SSI on November 18, 2004, alleging that he had been disabled since June 1, 2002 (Tr. 103-105, 108-10). The application was denied initially and upon reconsideration (Tr. 92-93A, 96-98). ALJ Janice M. Bruning rendered an unfavorable decision on June 27, 2008 (Tr. 29-38). On September 19, 2008, the Appeals Council vacated the unfavorable decision and remanded the case to the ALJ for further proceedings (Tr. 26-28). On February 3, 2009, Plaintiff, represented by counsel, Vocational Expert (VE) Kathleen Reis and a Medical Expert (ME), appeared and testified at a hearing before Administrative Law Judge (ALJ) Peter Beekman (Tr. 465-495). ALJ Beekman denied Plaintiff's disability claims on June 12, 2009 (Tr. 6-21), and the Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's decision the final decision of the Commissioner (Tr. 2-4). Plaintiff filed a timely request for judicial review of the Commissioner's decision denying his disability claims.

## II. FACTUAL BACKGROUND

**A.  PLAINTIFF'S TESTIMONY**

Plaintiff, a high school graduate, was 53 years old as of the date of the hearing (Tr. 468). Plaintiff had post-surgical wrist complications. He was diagnosed with hepatitis C and depression. The side effects of his medication included cephalgia and dizziness (Tr. 468-469). Plaintiff had been treated for depression with counseling and medication (Tr. 469).

Plaintiff had not worked during the past fifteen years (Tr. 471) and had not searched for work as his pain was too pervasive. Specifically, the pain and swelling in Plaintiff's left hand made it difficult to move his left hand (Tr. 472). He also had persistent headaches for which he was prescribed an anti-inflammatory (Tr. 473).

Plaintiff was a recovering heroin addict and alcoholic (Tr. 474). Plaintiff could not recall his sobriety date but he had not consumed alcohol during the past six years. He attended Alcoholic's Anonymous meetings (Tr. 471).

During an average day, Plaintiff got up, ate breakfast, took his medication and went back to sleep. Thereafter, he sat for most of the day and watched television. He slept eight hours daily and took naps lasting a couple of hours in the morning and afternoon (Tr. 471-472).

Plaintiff explained that the side effects of his medication included sleepiness and drowsiness.

2.  **ME'S TESTIMONY**

The ME, a board certified neurologist, characterized Plaintiff's impairments as a depressive disorder, panic attacks with agoraphobia, anti-social personality disorder and substance addiction disorder. Plaintiff's impairments met the requirements for Listing 12.04(a)(1), (b)(2) and (d)(3) and 12.09 in combination (Tr. 476, 480). Plaintiff had serious symptoms (ex: suicidal ideation, severe obsessive rituals) or serious impairment in social, occupational, or school functioning (ex: no friends, unable to hold a job). In addition, his substance abuse disorder would affect his ability to work. Plaintiff had only mental restrictions. If substance-free, Plaintiff would be restricted to work that did not involve high production quotas or work based upon a piece rate of pay and work that involved more than a superficial inter-personal interaction with supervisors, co-workers and the general public (Tr. 476-477).

3.  **VE'S TESTIMONY**

The VE explained that Plaintiff had no past relevant work (Tr. 482). Since he had no physical impairments, the VE concluded that Plaintiff could perform medium work (Tr. 483).

In response to a hypothetical question that included Plaintiff's demographic profile and restrictions from work that required high production quotas, no piece rate work and no assembly work, the VE

3

responded that Plaintiff could perform work in the national economy. Examples of medium, unskilled work that Plaintiff could perform included a grocery bagger, order picker, and industrial cleaner or janitor. There were at least 42,000 grocery bagger jobs in the nation, 18,000 grocery bagger jobs in the State of Ohio and 2,500 grocery bagger jobs in Northeast Ohio. With respect to the order picker jobs, there were at least 150,000 jobs in the nation, at least 9,000 in Ohio and 1,900 in Northeast Ohio (Tr. 483). There were at least one million industrial cleaner or janitor jobs in the nation, at least 40,000 industrial cleaner or janitor jobs in Ohio and at least 7,000 industrial cleaner or janitor jobs in Northeast Ohio (Tr. 483-484).

The VE's responses were unchanged if the hypothetical question was amended to include a person that could: (a) lift fifty pounds occasionally, (b) lift twenty five pounds frequently, (c) walk/stand, (d) sit six out of eight hours, (e) engage in unlimited pushing, pulling or pedaling, (f) frequently use a ladder, rope or scaffold, (g) frequently balance, stoop, kneel or crawl, (h) occasionally crouch and (i) never approach unprotected heights (Tr. 484). However, if the hypothetical claimant could only perform light work, the number of jobs would be reduced "a bit" (Tr. 485). If the hypothetical claimant was limited to occasionally handling and fingering, he/she would not be able to perform work identified by the VE as six-unskilled light occupations (Tr. 491, 492).

### III. MEDICAL EVIDENCE

In 1985, Plaintiff was injured while working under a car (Tr. 393). Plaintiff was treated by Dr. Anil for headaches, hand pain, depression, hypertension, and sexual-related issues in 2002 and 2003 (Tr. 248-255). Dr. Pai completed a basic medical assessment in June 2004, diagnosing Plaintiff with migraine headaches, hypertension, depression, chronic herpes suppression and chronic dizziness (Tr. 273). Dr. Pai opined that Plaintiff could lift or carry up to 20 pounds frequently, walk or stand for less than one hour a day, and that he was moderately limited in his ability to bend, push, or pull. The only moderate

4

limitations included bending and pushing/pulling (Tr. 274). In November 2004, Dr. Pai determined that Plaintiff was limited to lifting only 10 pounds frequently and was no longer limited in his ability to push or pull (Tr. 279).

In October 2004, Plaintiff was admitted to a hospital for drug abuse (Tr. 405). Plaintiff presented to the Murtis H. Taylor Multi-Service Center (Taylor Center) for treatment on November 9, 2004, and December 8, 2004. During his second visit, the treating nurse, Ellen Alaimo, increased Plaintiff's medication to address the auditory hallucinations (Tr. 458-459).

In November 2004, a treating nurse at the Taylor Center, determined that Plaintiff had marked limitations in his ability to maintain attention and concentration and interact with the general public, perform activities with a schedule, sustain an ordinary routine and make simple work related decisions. Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions, but not significantly limited in his ability to understand, remember, and carry out simple instructions, get along with coworkers, or make simple work related decisions (Tr. 275). It was her opinion that Plaintiff was unemployable for 9-11 months (Tr. 276).

Dr. David House, Ph. D., completed a psychological evaluation for the state agency on February 9, 2005. He diagnosed Plaintiff with depressive disorder not otherwise specified, panic disorder with agoraphobia, and polysubstance abuse in reported remission (Tr. 454). He indicated that Plaintiff had a serious impairment in social, occupational, and school functioning. Dr. House opined that Plaintiff was moderately limited in his ability to concentrate, withstand stress, and relate to others, had moderate limitations with his overall level of judgment, but was not limited in his ability to understand and follow directions (Tr. 454-555).

5

Dr. Myung Cho, an agency medical consultant, completed a physical capacity review on March 29, 2005, in which Dr. Cho indicated that Plaintiff could lift or carry up to 50 pounds occasionally and 25 pounds frequently, sit, stand, or walk for about six hours in an eight-hour workday, and was unlimited in his ability to push and pull (Tr. 421).

Todd Finnerty completed a psychiatric review on March 23, 2005, in which he found that Plaintiff was moderately limited with respect to his daily activities, social functioning, and concentration, persistence, and pace, and that he had experienced 1-2 extended episodes of decompensation (Tr. 442). He also concluded that Plaintiff was capable of performing simple, routine tasks that involved only occasional and superficial interactions with others (Tr. 448).

On May 16, 2005, Plaintiff was admitted to the Huron Hospital for drug and alcohol detoxification (Tr. 375-391, 398-414).  A significant amount of time was devoted to addressing his depression.  His medication was changed to include Cymbalta, a medication designed to treat major depressive disorders (Tr. 379). 75).

On July 11, 2005, Plaintiff admitted himself into the Huron Hospital for heroin and alcohol detoxification (Tr. 319-332, 372-374).  Plaintiff was "detoxing" well two days later (Tr. 331).  Plaintiff was discharged on July 15, 2005 (Tr. 372).

In October, 2005, Plaintiff went to the Taylor Center for treatment of depression (Tr. 220).  Nurse Alaimo diagnosed Plaintiff with recurrent major depression with psychotic symptoms and hypertension (Tr. 223).  Plaintiff discounted the psychosocial intervention which Nurse Alaimo believed would alleviate his depression (Tr. 225).  In January 2008, Nurse Alaimo prescribed an increased dosage of Cymbalta (Tr. 228).  In May, 2008, she withheld Abilify®, a medication designed to treat the causes of mental illness

6

(Tr. 227). Plaintiff continued to feel depressed in October 2008, and he continued to discount psychosocial interventions (Tr. 225).

Plaintiff was admitted to the Huron Hospital on July 11, 2005, January 31 and June 15, 2006, for detoxification (Tr. 281-317, 319-322 and 333-340, 342-370).

In January 2008, Plaintiff resumed treatment at the Taylor Center because Plaintiff was unable to make necessary lifestyle changes. Nurse Alaimo increased the dosage of Cymbalta (Tr. 228). In August 2008, Nurse Alaimo noted that Plaintiff continued to be depressed so she "held" the Abilify® (Tr. 226). Plaintiff continued to discount psychosocial intervention in October 2008 (Tr. 225).

Dr. Pai conducted clinical examinations in July and October 2008 and January 2009. Dr. Pai treated Plaintiff for hypertension, depression, earaches, and herpes (Tr. 231-246). During the course of treatment, Dr. Pai found that Plaintiff had no cardiovascular, pulmonary, abdominal, genitourinary or musculoskeletal symptoms (Tr. 241). In February 2009, Dr. Pai opined that Plaintiff was incapable of performing even "low stress" jobs and found that Plaintiff could (a) walk two blocks without rest or severe pain, (b) sit, stand, or walk a total of only two hours in an eight-hour workday, (c) lift or carry up to 20 pounds frequently and (d) stoop infrequently (Tr. 259). Plaintiff's physical limitations were "secondary to his psychiatric condition" (Tr. 260).

On March 20, 2009, Dr. J. Joseph Konieczny, Ph.D., completed a psychological evaluation for the agency during administration of the Minnesota Multiphasic Personality Inventory and the Rorschach tests (Tr. 194-203). Since the "F" scale score showed signs of invalidity, Dr. Konieczny suggested that the results be viewed with caution. However, the results show that Plaintiff perceived himself to be experiencing a significant degree of distress and turmoil and he tended to resist psychological

interpretations of his problems. He was likely to be irritable and resentful much of the time. He avoided close interpersonal relationships.

The results of the Rorschach test suggested that Plaintiff was minimally responsive to his environmental stimuli. Plaintiff exhibited symptoms of both anxiety and depression (Tr. 197). Dr. Konieczny found that Plaintiff had moderate impairments in functioning (Tr. 198).

Plaintiff had no limitations in his ability to concentrate, attend to tasks, and understand and follow directions, mild limitations in his ability to make judgments, and moderate limitations with handling stress and relating to others. Plaintiff's overall level of functioning was at a "slightly reduced level of efficiency" (Tr. 197).

Dr. Shu Huang completed a physical disability determination report on March 10, 2009 (Tr. 204-18). Dr. Huang's manual muscle testing showed decreased range of motion in Plaintiff's cervical spine, shoulders, elbows, wrists, hands/fingers and dorsolumbar spine (Tr. 207-210). However, Dr. Huang found few limitations, opining that Plaintiff could lift and carry up to 20 pounds frequently, and sit, stand, or walk for eight hours a day and frequently use his right or left hand for various tasks (Tr. 211. 213). Plaintiff could occasionally tolerate exposure to extreme cold or vibrations (Tr. 215).

## IV. STANDARD OF REVIEW

This Court exercises jurisdiction over review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383 (c)(3). *McClanahan v. Commissioner of Social Security*, 474 F.3d 830, 832-33 (6th Cir. 2006). Judicial review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003) (*see Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive so long as they are supported by substantial evidence.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  The court's review is limited to determining whether there is substantial evidence in the record to support the findings.  *Id.* (*citing Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 851 (6th Cir.1986)).  Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "  *Id.* (*citing Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir.1981) *cert. denied,* 103 S. Ct. 428 (1983) (*quoting Richardson v. Perales*, 91 S. Ct. 1420, 1426 (1971)).  Furthermore, the court must defer to an agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."  *Id.* (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  The court's role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony.  *Id.* at 614-615 (*citing Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987)).

## V.  STANDARD FOR ESTABLISHING DISABILITY

To establish disability under the Act, a claimant must show that he/she is unable to engage in substantial activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."  *Underwood v. Commissioner of Social Security*, 2010 WL 424970, *4  (N. D. Ohio 2010) (*citing* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A)).  The claimant's impairment must prevent him or her from doing his or her previous work, as well as any other work existing in significant numbers in the national economy.  *Id.* (*citing* 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3) (B)).  A five-step sequential evaluation is employed to determine whether a claimant is disabled.  *Id.*  If a claimant can be

9

found disabled or not disabled at any step of the sequential evaluation, the review ends. *Id.* (*citing* 20 C.F.R. § 404.1520(a)).

At Step One, the ALJ considers the claimant's work activity. A claimant is not disabled if engaged in substantial gainful activity, *i.e.,* working for profit. *Id.*

At Step Two, the ALJ considers the medical severity of the claimant's impairments. A claimant is not disabled if he/she does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are severe and meets the duration requirement. *Id.*

At Step Three, the ALJ determines whether the claimant has an impairment that meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement. *Id.* (*see* 20 C.F.R. § Part 404, Subpart P, Appendix 1). A claimant is disabled if he or she has an impairment that meets the listing and the duration requirement. *Id.* Before considering the fourth step, the ALJ must determine the claimant's Residual Functional Capacity (RFC), *i.e.,* the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments. *Id.*

At Step Four, the ALJ considers whether the claimant's RFC permits him/her to perform past relevant work. *Id.*

At the final step, Step Five, the ALJ considers the claimant's RFC and his or her age, education, and work experience to determine whether the claimant may work. *Id.* Even if the claimant's impairment does prevent him/her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, then the claimant is not disabled. *Id.* (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 124 S. Ct. 376, 379 (2003) (describing five-step evaluation)).

The claimant bears the burden of proof at steps one through four. *Id*. (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004)). At Step Five, the burden shifts to the Commissioner to identify "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id*. (*citing Jones v. Commissioner of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003)). The claimant bears the ultimate burden of proof on the issue of disability. *Id.* at *4-5 (*see* 20 C. F. R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Richardson v. Heckler*, 750 F. 2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the burden of proof on the issue of disability."). The burden of proof regarding the establishment of disability onset date lies with the claimant. *Id.* (*citing McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 836 (6th Cir. 2006)). Moreover, the claimant has the burden of providing detailed medical evidence allowing the ALJ to make an informed decision. *Id.* (*see Landsaw v. Secretary of Health & Human Services*, 803 F.2d 211, 214 (6th Cir. 1986)). Lastly, the claimant must not only produce a diagnosis of an impairment, but also demonstrate correlative functional limitations. *Id.* (*citing* 20 C.F.R. § 404.1512(c)).

## VI. ALJ DETERMINATIONS

After consideration of the entire record, the ALJ made the following findings:

1. Plaintiff had not performed substantial gainful activity since November 8, 2004.

2. Plaintiff had severe impairments consisting of post-traumatic arthritis of the left hand, status post resection of the distal ulnar of the left wrist, depressive disorder, anxiety disorder not otherwise specified, and a history of polysubstance addiction, including heroin, cocaine and alcohol, in remission since February 2006

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix 1.

4. Plaintiff had the Residual Functional Capacity (RFC) to perform medium work except that he could stand and walk up to six hours in an eight-hour workday and sit for six hours in

an eight-hour workday. Plaintiff could perform no more than simple repetitive tasks involving low stress work with no production quotas.

5. Plaintiff did not have past relevant work.

6. Plaintiff was forty-eight years old, had at least a high school education and was able to communicate in English.

7. Based on Plaintiff's RFC, age, education and work experience, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

8. Plaintiff was not under a "disability" as defined in the Act, at any time since December 22, 2005 (20 C.F.R. § 416.920(g)).

(Tr. 9-21)

## VII. DISCUSSION

Plaintiff seeks remand and alleges that:

(1) The ALJ's decision at Step Two of the Sequential Evaluation is contrary to law.

(2) The ALJ's decision at Step Three of the Sequential Evaluation is contrary to law and not based on substantial evidence.

(3) The ALJ"s medical equivalence finding is contrary to law.

(4) The ALJ's RFC is not based on substantial evidence and is contrary to law.

(5) The hypothetical question was flawed.

(6) The ALJ's finding that Plaintiff could perform a significant number of jobs that exist in the national economy was not based on substantial evidence.

Defendant argues that:

(1) The ALJ should have adopted the findings of ALJ White absent evidence of changed circumstances.

(2) The medical evidence relied upon by plaintiff did not support a more restrictive RFC.

(3) To the extent there are minor discrepancies between the two RFC findings, those discrepancies are not material.

(4)  Both ALJ White and ALJ Beekman reasonably found that Plaintiff had severe impairments.

(5)  ALJ White's "Listings" finding is entitled to collateral estoppel effect.

(6)  ALJ Beekman's decision is legally sound and supported by substantial evidence.

**1.   FINDINGS OF SEVERE IMPAIRMENTS AT STEP TWO.**

Plaintiff argues that the ALJ's Step Two decision is contrary to law because it fails to take into consideration the severe impairments found by ALJ White. Defendant concedes that ALJ Beekman is bound by the findings of ALJ White, absent evidence of changed circumstances in the claimant's condition. Since Plaintiff failed to demonstrate that his condition worsened, collateral estoppel applies to all of ALJ White's determinations that led to the finding of non-disability.

Social security claimants are bound by principles of res judicata. *Drummond v. Commissioner of Social Security,* 126 F.3d 837, 841(6th Cir. 1997); *Carver v. Secretary of Health & Human Services,* 869 F. 2d 289, 291 (6th Cir. 1989)). Res judicata is a common-law concept which prescribes that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* (*citing Allen v. McCurry*, 101 S. Ct. 411, 414 (1980) (*citing Cromwell v. County of Sac,* 94 U.S. (4 Otto) 351, 352 (1876)). Absent evidence of improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ. *Id.* at 842.

When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding. *Mickens v. Astrue,* 2008 WL 5501145, 2 (N. D. Ohio,2008)

Plaintiff argues that ALJ Beekman should have incorporated ALJ White's impairments to assess disability. ALJ Beekman was bound by the adjudication of Plaintiff's claims arising prior to the protective filing date of February 16, 1999, for disability since June 1, 1988. ALJ Beekman acknowledged this fact and discussed ALJ White's finding that Plaintiff suffered from severe post traumatic arthritis of the left wrist, status post resection of the distal ulner, previous substance abuse, adjustment disorder, antisocial personality disorder, borderline intellectual functioning, possible carotid hypersensitivity, hypertension, chronic headaches/migraines, history of pain in the lift hip and knee and Hepatitis C (Tr. 52). ALJ Beekman considered each of these impairments and their severity (Tr. 12). However, ALJ Beekman found that some of these impairments had improved and were well controlled with treatment and medication. The ALJ appropriately considered ALJ White's findings of impairment, subject to their improvements during the intervening time period.

2. **COMBINATION OF IMPAIRMENTS AT STEP THREE**.

Plaintiff argues that the ALJ did not properly consider the combined impact of all of Plaintiff's impairments. Specifically, ALJ White's severe impairment findings must be considered in combination with all impairments.

The Act requires the Commissioner to consider the combined effects of impairments that individually may be non-severe, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability. *Saine v. Commissioner of Social Security,* 2009 WL 891768, *11 (S. D. Ohio 2009) ((*citing* 42 U.S.C. § 423(d)(2)(C); *Foster v. Bowen,* 853 F.2d 483, 490 (6th Cir. 1988)). An ALJ's individual discussion of multiple impairments does not imply that he or she failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a combination of impairments in finding that the claimant fails to meet the listings. *Id.* (*citing Loy v. Secretary of Health*

*& Human Services,* 901 F.2d 1306, 1310 (6th Cir. 1990) (*citing Gooch v. Secretary of Health & Human Services,* 833 F.2d 589 (6th Cir. 1987)).

The structure of the discussion as well as its language indicates that ALJ Beekman and ALJ White considered Plaintiff's impairments in combination with each other. Both found that Plaintiff had no impairment or combination of impairments that met or equaled the listing. Consequently, ALJ Beekman's decision was unaffected by ALJ White's determination. The Magistrate does not find that the ALJ failed to consider the effect of Plaintiff's impairments in combination where the ALJ specifically asserts that he considered the combined effect of all of Plaintiff's impairments including those impairments found by ALJ White exclusive of those impairments that have improved since ALJ White rendered his opinion.

**3.    MEDICAL EQUIVALENCE**

Plaintiff argues that the ALJ's medical equivalence finding is contrary to law because it fails to consider ALJ White's severe impairment findings.

The Regulations, specifically 20 C. F. R. § 416.926(a) & (b), define medical equivalence and how it is determined as:

> Your impairment(s) is medically equivalent to a listed impairment in appendix 1 of subpart P of part 404 of this chapter if it is at least equal in severity and duration to the criteria of any listed impairment. We can find medical equivalence in three ways. If you have an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but you do not exhibit one or more of the findings specified in the particular listing, or you exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing. We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria. If you have an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, we will compare your findings with those for closely analogous listed impairments. If you have a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter (see § 416.925(c)(3)), we will compare your findings with those for closely analogous listed impairments.

15

20 C.F.R. § 416.926(a) & (b) (1), (2), (3) (Thomson Reuters 2010).

In cases where the state agency or other designee of the Commissioner makes the initial or reconsideration disability determination, a state agency medical or psychological consultant or other designee of the Commissioner has the overall responsibility for determining medical equivalence.  20 C. F. R. § 416.926(e) (Thomson Reuters 2010).

ALJ Beekman obtained the professional opinion of a ME.  The ME explained that Plaintiff's severe impairments met the requirements of Listing 12.04 and 12.09 in combination.  Included in this assessment were the impairments found severe by ALJ White that had demonstrated improvement during the intervening time period.  The ALJ's medical equivalence finding is based, in part, on ALJ White's severe impairment findings.

**4.     PLAINTIFF'S RFC**.

Plaintiff contends that the ALJ's RFC is not based on substantial evidence as it fails to incorporate and/or analyze:  (1) ALJ White's favorable findings, (2) the factors contained in 20 C. F. R. § 416.927(d), and (3) the findings of Drs. Huang and Konieczny.

RFC is an assessment of what a claimant can and cannot do, not what he or she does and does not suffer from.  *Howard v. Commissioner of Social Security*, 276 F.3d 235, 239 (6th Cir. 2002).  Simply, RFC is an assessment of remaining abilities for work once the limitations have been taken into account.  *Id.*  In determining RFC, the doctrine of res judicata applies and absent evidence of improvement in the claimant's position, a subsequent ALJ is bound by the findings of the previous ALJ.  *Lawson v. Astrue*, 695 F. Supp. 2d 729, 747 (S. D. Ohio 2010).

The Magistrate finds that there is no indication that ALJ Beekman, bound by the additional limitations imposed by ALJ White in the previous case, considered ALJ White's findings in determining

Plaintiff's RFC. Neither is there is a showing of improvement during the prior decision which would have discounted the RFC previously found by ALJ White. In the instant case, remand is appropriate so that the Commissioner can resolve this issue and accurately establish Plaintiff's RFC.

**5.     THE HYPOTHETICAL QUESTION.**

Plaintiff suggests that if the RFC is flawed, then the hypothetical question posed to the VE did not accurately reflect his functional limitations.

In order for a VE's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments. *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010) (*citing Howard*, *supra*, 276 F. 3d at 241; *see also Webb v. Commissioner of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004) (though an ALJ need not list a claimant's medical conditions, the hypothetical should provide the vocational expert with the ALJ's assessment of the what the claimant "can and cannot do.")). The ALJ is not obliged to include unsubstantiated complaints in the hypotheticals. *See Hardaway v. Secretary of Human Services*, 823 F. 2d 922, 927-928 (6th Cir. 1987).

Here, although the ALJ posed adequate hypothetical questions based on the evidence adduced in this case, the ALJ failed to include the impact of Plaintiff's RFC, if any, as determined by ALJ White in the hypothetical posed to the VE. Alternately, the ALJ did not explain why ALJ White's RFC findings were discounted. It is inherent that if Plaintiff's functional limitations were inaccurately defined, then at least one of the hypothetical questions posed to the VE inaccurately depicted all of Plaintiff's physical and mental impairments. The Magistrate recommends that on remand, the Commissioner incorporate an accurate portrayal of Plaintiff's physical and mental impairments based on ALJ White's RFC in the hypothetical question or questions posed to the VE.

**6.     JOBS THAT EXIST IN THE NATIONAL ECONOMY.**

Plaintiff contends that since the ALJ's Step Four decision is not based on substantial evidence, the Step Five decision is similarly not based on substantial evidence. The Magistrate finds that substantial evidence does support the Commissioner's decision based exclusively on evidence adduced in this case. However, ALJ Beekman was bound to consider the opinions of ALJ White when assessing the jobs that exist, if any, in the national economy that Plaintiff can perform. This issue, too, should be resolved by the Commissioner on remand.

### VIII. CONCLUSION.

For the foregoing reasons, the Magistrate recommends that the Court terminate the referral to the Magistrate and remand this case to the Commissioner to:

1. Consider ALJ White's findings in determining Plaintiff's RFC or evidence of improvement in Plaintiff's condition and make a new RFC determination which incorporates ALJ White's RFC.
2. Obtain an accurate assessment of jobs in the national, state and local economies that Plaintiff can perform by posing a hypothetical question or questions that accurately portray Plaintiff's physical and mental impairments as determined by ALJs White and Beekman.
3. Consider whether there is substantial evidence of jobs that Plaintiff can perform based on the findings of ALJs White and Beekman.
4. Issue a new decision based on the reconsideration of these factors.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: August 16, 2010

### VIV. NOTICE FOR REVIEW

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed. Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, as amended on December 1, 2009, any party may object to the report and recommendations within fourteen (14) days after being served with a copy thereof. Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure. The

18

objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.