IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID LAWRENCE,** | ) | **CASE NO. 1:09 CV 1952** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| | ) | **Magistrate Judge Armstrong** |
| | ) | |
| **COMMISSIONER OF** | ) | **MEMORANDUM OPINION** |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court upon the Report and Recommendation of Magistrate Judge Vernelis K. Armstrong. (Docket #25.) Plaintiff challenges the final decision of the Commissioner denying his application for Supplemental Social Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq.,and § 405(g).

### FACTUAL AND PROCEDURAL HISTORY

As set forth by the Magistrate Judge, the factual and procedural history of this case is as follows:

**I. Procedural Background.**

Plaintiff filed an application for SSI with a protective filing date of February 16, 1999, alleging disability since June 1, 1988. His claim was denied initially and upon reconsideration. On March 16, 2000, Administrative Law Judge (ALJ) Morley White found that Plaintiff was not eligible for SSI (Tr. 49- 53).

Plaintiff filed an application for SSI on November 18, 2004, alleging that he had been disabled since June 1, 2002 (Tr. 103-105, 108-10). The application was denied initially and upon reconsideration (Tr. 92-93A, 96-98). ALJ Janice M. Bruning rendered an unfavorable decision on June 27, 2008 (Tr. 29- 38). On September 19, 2008, the Appeals Council vacated the unfavorable decision and remanded the case to the ALJ for further proceedings (Tr. 26-28). On February 3, 2009, Plaintiff, represented by counsel, Vocational Expert (VE) Kathleen Reis and a Medical Expert (ME), appeared and testified at a hearing before Administrative Law Judge (ALJ) Peter Beekman (Tr. 465-495). ALJ Beekman denied Plaintiff's disability claims on June 12, 2009 (Tr. 6-21), and the Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's decision the final decision of the Commissioner (Tr. 2-4). Plaintiff filed a timely request for judicial review of the Commissioner's decision denying his disability claims.

## II. Factual Background

### A. Plaintiff's Testimony.

Plaintiff, a high school graduate, was 53 years old as of the date of the hearing(Tr. 468). Plaintiff had post-surgical wrist complications. He was diagnosed with hepatitis C and depression. The side effects of his medication included cephalgia and dizziness (Tr. 468- 469). Plaintiff had been treated for depression with counseling and medication (Tr. 469).

Plaintiff had not worked during the past fifteen years (Tr. 471) and had not searched for work as his pain was too pervasive. Specifically, the pain and swelling in Plaintiff's left hand made it difficult to move his left hand (Tr. 472). He also had persistent headaches for which he was prescribed an anti-inflammatory (Tr. 473).

Plaintiff was a recovering heroin addict and alcoholic (Tr. 474). Plaintiff could not recall his sobriety date but he had not consumed alcohol during the past six years. He attended Alcoholic's Anonymous meetings (Tr. 471).

During an average day, Plaintiff got up, ate breakfast, took his medication and went back to sleep. Thereafter, he sat for most of the day and watched television. He slept eight hours daily and took naps lasting a couple of hours in the morning and afternoon (Tr. 471-472).

Plaintiff explained that the side effects of his medication included sleepiness and drowsiness.

2. **ME'S TESTIMONY**

The ME, a board certified neurologist, characterized Plaintiff's impairments as a depressive disorder, panic attacks with agoraphobia, anti-social personality disorder and substance addiction disorder.  Plaintiff's impairments met the requirements for Listing 12.04(a)(1), (b)(2) and (d)(3) and 12.09 in combination (Tr. 476, 480). Plaintiff had serious symptoms (ex: suicidal ideation, severe obsessive rituals) or serious impairment in social, occupational, or school functioning (ex: no friends, unable to hold a job).  In addition, his substance abuse disorder would affect his ability to work. Plaintiff had only mental restrictions. If substance-free, Plaintiff would be restricted to work that did not involve high production quotas or work based upon a piece rate of pay and work that involved more than a superficial interpersonal interaction with supervisors, co-workers and the general public (Tr. 476-477).

3. **VE'S TESTIMONY**

The VE explained that Plaintiff had no past relevant work (Tr. 482). Since he had no physical impairments, the VE concluded that Plaintiff could perform medium work (Tr. 483).

In response to a hypothetical question that included Plaintiff's demographic profile and restrictions from work that required high production quotas, no piece rate work and no assembly work, the VE responded that Plaintiff could perform work in the national economy. Examples of medium, unskilled work that Plaintiff could perform included a grocery bagger, order picker, and industrial cleaner or janitor.  There were at least 42,000 grocery bagger jobs in the nation, 18,000 grocery bagger jobs in the State of Ohio and 2,500 grocery bagger jobs in Northeast Ohio. With respect to the order picker jobs, there were at least 150,000 jobs in the nation, at least 9,000 in Ohio and 1,900 in Northeast Ohio (Tr. 483). There were at least one million industrial cleaner or janitor jobs in the nation, at least 40,000 industrial cleaner or janitor jobs in Ohio and at least 7,000 industrial cleaner or janitor jobs in Northeast Ohio (Tr. 483-484).

The VE's responses were unchanged if the hypothetical question was amended to include a person that could: (a) lift fifty pounds occasionally, (b) lift twenty five pounds frequently, (c) walk/stand, (d) sit six out of eight hours, (e) engage in unlimited pushing, pulling or pedaling, (f) frequently use a ladder, rope or scaffold, (g) frequently balance, stoop, kneel or crawl, (h) occasionally crouch and (i) never approach unprotected heights (Tr. 484). However, if the hypothetical claimant could only perform light work, the number of jobs would be reduced "a bit" (Tr. 485). If the hypothetical claimant was limited to occasionally handling and fingering, he/she would not be able to perform work identified by the VE as six-unskilled light

occupations (Tr. 491, 492).

### III. MEDICAL EVIDENCE

In 1985, Plaintiff was injured while working under a car (Tr. 393). Plaintiff was treated by Dr. Anil for headaches, hand pain, depression, hypertension, and sexual-related issues in 2002 and 2003 (Tr. 248-255). Dr. Pai completed a basic medical assessment in June 2004, diagnosing Plaintiff with migraine headaches, hypertension, depression, chronic herpes suppression and chronic dizziness (Tr. 273). Dr. Pai opined that Plaintiff could lift or carry up to 20 pounds frequently, walk or stand for less than one hour a day, and that he was moderately limited in his ability to bend, push, or pull. The only moderate limitations included bending and pushing/pulling (Tr. 274). In November 2004, Dr. Pai determined that Plaintiff was limited to lifting only 10 pounds frequently and was no longer limited in his ability to push or pull (Tr. 279).

In October 2004, Plaintiff was admitted to a hospital for drug abuse (Tr. 405). Plaintiff presented to the Murtis H. Taylor Multi-Service Center (Taylor Center) for treatment on November 9, 2004, and December 8, 2004. During his second visit, the treating nurse, Ellen Alaimo, increased Plaintiff's medication to address the auditory hallucinations (Tr. 458-459).

In November 2004, a treating nurse at the Taylor Center, determined that Plaintiff had marked limitations in his ability to maintain attention and concentration and interact with the general public, perform activities with a schedule, sustain an ordinary routine and make simple work related decisions. Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions, but not significantly limited in his ability to understand, remember, and carry out simple instructions, get along with coworkers, or make simple work related decisions (Tr. 275). It was her opinion that Plaintiff was unemployable for 9-11 months (Tr. 276).

Dr. David House, Ph. D., completed a psychological evaluation for the state agency on February 9, 2005. He diagnosed Plaintiff with depressive disorder not otherwise specified, panic disorder with agoraphobia, and polysubstance abuse in reported remission (Tr. 454). He indicated that Plaintiff had a serious impairment in social, occupational, and school functioning. Dr. House opined that Plaintiff was moderately limited in his ability to concentrate, withstand stress, and relate to others, had moderate limitations with his overall level of judgment, but was not limited in his ability to understand and follow directions (Tr. 454-555).

Dr. Myung Cho, an agency medical consultant, completed a physical

capacity review on March 29, 2005, in which Dr. Cho indicated that Plaintiff could lift or carry up to 50 pounds occasionally and 25 pounds frequently, sit, stand, or walk for about six hours in an eight-hour workday, and was unlimited in his ability to push and pull (Tr. 421).

Todd Finnerty completed a psychiatric review on March 23, 2005, in which he found that Plaintiff was moderately limited with respect to his daily activities, social functioning, and concentration, persistence, and pace, and that he had experienced 1-2 extended episodes of decompensation (Tr. 442). He also concluded that Plaintiff was capable of performing simple, routine tasks that involved only occasional and superficial interactions with others (Tr. 448).

On May 16, 2005, Plaintiff was admitted to the Huron Hospital for drug and alcohol detoxification (Tr. 375-391, 398-414). A significant amount of time was devoted to addressing his depression. His medication was changed to include Cymbalta, a medication designed to treat major depressive disorders (Tr. 379).

On July 11, 2005, Plaintiff admitted himself into the Huron Hospital for heroin and alcohol detoxification (Tr. 319-332, 372-374). Plaintiff was "detoxing" well two days later (Tr. 331). Plaintiff was discharged on July 15, 2005 (Tr. 372).

In October, 2005, Plaintiff went to the Taylor Center for treatment of depression (Tr. 220). Nurse Alaimo diagnosed Plaintiff with recurrent major depression with psychotic symptoms and hypertension (Tr. 223). Plaintiff discounted the psychosocial intervention which Nurse Alaimo believed would alleviate his depression (Tr. 225). In January 2008, Nurse Alaimo prescribed an increased dosage of Cymbalta (Tr. 228). In May, 2008, she withheld Abilify®, a medication designed to treat the causes of mental illness (Tr. 227). Plaintiff continued to feel depressed in October 2008, and he continued to discount psychosocial interventions (Tr. 225).

Plaintiff was admitted to the Huron Hospital on July 11, 2005, January 31 and June 15, 2006, for detoxification (Tr. 281-317, 319-322 and 333-340, 342-370).

In January 2008, Plaintiff resumed treatment at the Taylor Center because Plaintiff was unable to make necessary lifestyle changes. Nurse Alaimo increased the dosage of Cymbalta (Tr. 228). In August 2008, Nurse Alaimo noted that Plaintiff continued to be depressed so she "held" the Abilify® (Tr. 226). Plaintiff continued to discount psychosocial intervention in October 2008 (Tr. 225).

Dr. Pai conducted clinical examinations in July and October 2008 and January 2009. Dr. Pai treated Plaintiff for hypertension, depression, earaches, and herpes (Tr. 231-246). During the course of treatment, Dr. Pai found that Plaintiff had no cardiovascular, pulmonary, abdominal, genitourinary or musculoskeletal symptoms (Tr. 241). In February 2009, Dr. Pai opined that Plaintiff was incapable of performing even "low stress" jobs and found that Plaintiff could (a) walk two blocks without rest or severe pain, (b) sit, stand, or walk a total of only two hours in an eight-hour workday, (c) lift or carry up to 20 pounds frequently and (d) stoop infrequently (Tr. 259). Plaintiff's physical limitations were "secondary to his psychiatric condition" (Tr. 260).

On March 20, 2009, Dr. J. Joseph Konieczny, Ph.D., completed a psychological evaluation for the agency during administration of the Minnesota Multiphasic Personality Inventory and the Rorschach tests (Tr. 194-203). Since the "F" scale score showed signs of invalidity, Dr. Konieczny suggested that the results be viewed with caution. However, the results show that Plaintiff perceived himself to be experiencing a significant degree of distress and turmoil and he tended to resist psychological interpretations of his problems. He was likely to be irritable and resentful much of the time. He avoided close interpersonal relationships.

The results of the Rorschach test suggested that Plaintiff was minimally responsive to his environmental stimuli. Plaintiff exhibited symptoms of both anxiety and depression (Tr. 197). Dr. Konieczny found that Plaintiff had moderate impairments in functioning (Tr. 198).

Plaintiff had no limitations in his ability to concentrate, attend to tasks, and understand and follow directions, mild limitations in his ability to make judgments, and moderate limitations with handling stress and relating to others. Plaintiff's overall level of functioning was at a "slightly reduced level of efficiency" (Tr. 197).

Dr. Shu Huang completed a physical disability determination report on March 10, 2009 (Tr. 204- 18). Dr. Huang's manual muscle testing showed decreased range of motion in Plaintiff's cervical spine, shoulders, elbows, wrists, hands/fingers and dorsolumbar spine (Tr. 207-210). However, Dr. Huang found few limitations, opining that Plaintiff could lift and carry up to 20 pounds frequently, and sit, stand, or walk for eight hours a day and frequently use his right or left hand for various tasks (Tr. 211. 213).  Plaintiff could occasionally tolerate exposure to extreme cold or vibrations (Tr. 215).

The ALJ made the following findings:

1. Plaintiff had not performed substantial gainful activity since November 8, 2004.

    2.       Plaintiff had severe impairments consisting of post-traumatic arthritis of the left hand, status post resection of the distal ulnar of the left wrist, depressive disorder, anxiety disorder not otherwise specified, and a history of polysubstance addiction, including heroin, cocaine and alcohol, in remission since February 2006.

    3.       Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix 1.

    4.       Plaintiff had the Residual Functional Capacity (RFC) to perform medium work except that he could stand and walk up to six hours in an eight-hour workday and sit for six hours in an eight-hour workday. Plaintiff could perform no more than simple repetitive tasks involving low stress work with no production quotas.

    5.       Plaintiff did not have past relevant work.

    6.       Plaintiff was forty-eight years old, had at least a high school education and was able to communicate in English.

    7.       Based on Plaintiff's RFC, age, education and work experience, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

    8.       Plaintiff was not under a "disability" as defined in the Act, at any time since December 22, 2005 (20 C.F.R. § 416.920(g)).

(Tr. 9-21)

On January 8, 2010, Plaintiff filed his Brief and Assignment of Errors in Support of Reversal. (Docket #16.) The Commissioner filed a Response Brief on March 24, 2010. (Docket #19.)

The Magistrate Judge found the majority of the Commissioner's decision to be supported by substantial evidence. However, the Magistrate Judge recommends that the case be remanded to the Commissioner, pursuant to Sentence Four of 42 U.S.C. § 405(g). Specifically, the Magistrate Judge recommends that the case be remanded to the Commissioner to:

>    1. Consider ALJ White's findings in determining Plaintiff's RFC or evidence of improvement in Plaintiff's condition and make a new RFC determination which incorporates ALJ White's RFC.
>
>    2. Obtain an accurate assessment of jobs in the national, state and local economies that Plaintiff can perform by posing a hypothetical question or questions that accurately portray Plaintiff's physical and mental impairments as determined by ALJs White and Beekman.
>
>    3. Consider whether there is substantial evidence of jobs that Plaintiff can perform based on the findings of ALJs White and Beekman.
>
>    4. Issue a new decision based on the reconsideration of these factors.

On August 27, 2010, Defendant Commissioner of Social Security filed Objections to the Magistrate's Report and Recommendation. (Docket #26.) The Commissioner states that, contrary to the Magistrate Judge's findings, ALJ Beekman explicitly considered ALJ White's findings in determining Plaintiff's RFC. Specifically, the Commissioner notes that at the end of ALJ Beekman's RFC analysis, he compared his RFC finding to that of ALJ White, stating that he came to a "similar conclusion as Judge White" and that both ALJ s White and Beekman found Plaintiff to be limited to medium work with certain prescribed nonexertional limitations. (Tr. 14, 19 and 52.)

Further, the Commissioner states that any discrepancies between the findings of ALJ White and ALJ Beekman are not material and, even if considered, the result would have been identical. Accordingly, the Commissioner argues that the ALJ's decision is supported by substantial evidence, the Magistrate Judge's Report and Recommendation should be rejected and, the ALJ's decision be affirmed.

On September 7, 2010, Plaintiff filed his Response to Defendant's Objection to the Magistrate's Report and Recommendation. (Docket #27.) Plaintiff asserts that ALJ Beekman did not take into consideration ALJ White's favorable RFC findings, including the inability to

-8-

perform "work requiring frequent changes in job descriptions, place or work or methods of jobs", work "around moving machinery", and "work requiring him to quickly change position." Plaintiff argues that there is no evidence of medical improvement and ALJ White's favorable findings are *res judicata*.

### STANDARD OF REVIEW FOR MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The applicable district court standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to the report. When objections are made to the report and recommendation of a magistrate judge, the district court reviews the case *de novo*. FED. R. CIV. P. 72(b) provides:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

The standard of review for a magistrate judge's report and recommendation is distinct from the standard of review for the Commissioner of Social Security's decision regarding benefits. Judicial review of the Commissioner's decision, as reflected in the decisions of the ALJ, is limited to whether the decision is supported by substantial evidence. *See Smith v. Secretary of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citation omitted).

### DISCUSSION

This Court conducted a *de novo* review of this case and has considered all of the pleadings, transcripts, and filings of the parties, as well as the Objections to the Report and

Recommendation filed by the Commissioner and Mr. Lawrence's response thereto. After careful evaluation of the record, the Court declines to adopt the Report and Recommendation issued by Magistrate Judge Armstrong to the extent that the Magistrate Judge recommended remand to the Commissioner for consideration of ALJ White's findings.

The doctrine of collateral estoppel bars relitigation of an issue decided in a previous proceeding under the following circumstances:

> (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue.

*Hammer v. I.N.S.*., 195 F.3d 836, 840 (6th Cir. 1999). The doctrines of *res judicata* and collateral estoppel are embodied in 42 U.S.C. § 405(h), which states, in part, that the "findings and decision of the Commissioner of Social Security after hearing shall be binding upon all individuals who were parties to such hearing."

In *Hamlin v. Commissioner of Social Security*, Case No. 96-3243, 1996 U.S. App. LEXIS 33275, (6th Cir. Ohio Dec. 17, 1996), the Sixth Circuit, faced with similar circumstances, concluded that collateral estoppel did not apply to a prior RFC determination. In *Hamlin*, the claimant filed an application for disability insurance benefits on July 2, 1984. In a decision dated September 17, 1985, the ALJ concluded that the claimant retained the capacity to perform sedentary work and, therefore, that he was not disabled. The claimant did not seek review of the ALJ's decision. The claimant then filed a second application for disability insurance benefits for the period of September 18, 1985 to September 30, 1986. A different ALJ concluded that the

claimant retained the capacity to perform medium work and the application was denied.[1] On appeal, the claimant argued that, pursuant to the doctrine of collateral estoppel, the second ALJ was bound by the first ALJ's determination that the claimant had the capacity to perform only sedentary work. In rejecting the claimant's collateral estoppel argument, the Sixth Circuit stated as follows:

> The collateral estoppel doctrine embodied in [42 U.S.C. § 405(h)] cannot salvage Mr. Hamlin's latest claim. The claimant's residual functional capacity from September of 1985 through September of 1986 was not adjudicated in the first proceeding – and because medical conditions and impairments can change over time, his findings as to a claimant's residual functional capacity during one period "[a]re not conclusive evidence of [his] residual functional capacity at a later date."

*Hamlin*, 1996 U.S. App. LEXIS 33275, at *4-5.

Like the claim in *Hamlin*, the claim before ALJ Beekman involved a different period of time than the claim before ALJ White. In his decision, dated June 9, 2009, ALJ Beekman found Plaintiff was not disabled since November 8, 2004. The period of disability asserted by Plaintiff relative to his November 8, 2004 application began on June 1, 2002 and was not adjudicated in the prior proceeding. Plaintiff's prior application was filed on February 16, 1999 and a decision, also finding that Plaintiff was not disabled, was rendered by ALJ White on March 16, 2001.

The Magistrate Judge references the analysis of ALJ Beekman, indicating that "some of Plaintiff's impairments improved and were well controlled with treatment and medication" and that ALJ Beekman "appropriately considered ALJ White's findings of impairment, subject to their improvements during the intervening time period." Medical conditions and impairments are transitory and, although ALJ Beekman discusses his review of ALJ White's 2001 decision,

---

[1] In this case, both Plaintiff's first and second application for benefits resulted in a finding of "not disabled."

-11-

ALJ Beekman was not bound by ALJ White's findings regarding Plaintiff's RFC. See also *Stigler v. Commissioner of Social Security*, Case No. 04 CV 72020 DT, 2005 U.S. Dist. LEXIS 20336 (E.D. Mich. Feb. 8, 2005) (citing *Hamlin*, 1996 U.S. App. LEXIS 33275)).

## CONCLUSION

The Court has reviewed the entire record in this case and finds the decision of the Commissioner to be supported by substantial evidence. The Report and Recommendation is hereby adopted to the extent that Magistrate Judge Armstrong determined the same. However, for the reasons stated above, the Court declines to adopt the Report and Recommendation to the extent that the Magistrate Judge recommended remand for consideration and incorporation of ALJ White's findings. ALJ Beekman was not required to incorporate ALJ White's findings in his decision. Defendant's final determination denying Plaintiff's claim is hereby AFFIRMED.

IT IS SO ORDERED.

      s/Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: September 21, 2010